Argued January 15, affirmed February 18, 1975

FAJARDO, *Petitioner, v.*
EMPLOYMENT DIVISION, *Respondent.*
532 P2d 29

*J. Bradford Shiley,* Portland, argued the cause and filed the brief for petitioner.

*Rhidian M. M. Morgan,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

This is the second appeal by claimant from orders of the Employment Appeals Board disallowing her claims for unemployment benefits based on referee decisions. In the former appeal, *Fajardo v. Morgan,* 15 Or App 454, 516 P2d 495 (1973), we held that claimant had been discriminated against in pay because of her sex and that therefore she had good cause to leave her employment. The current appeal is from a new order holding her ineligible for continuing payments because she was not "* * * actively seeking and unable to obtain suitable work * * *" as required under ORS 657.155(1)(c).

She had received $585 per month from the former employer as a telephone sales correspondent—which apparently involved coordinating, trouble-shooting and some incidental telephone sales work for field salesmen in a particular region. Men doing the same work for Boise Cascade were receiving $1,000 to $1,200 per month. In seeking similar work with a possible new employer she set $750 per month as a minimum salary below which she would and did adamantly refuse new employment. She testified:

"A * * * [W]ell, for instance, one person told me that they'd hire me for six months for $625.00 and let me work for six months and then give me a raise comparable to my ability after six months, and I'm not going back to work for that because I did that for two years, because that's what I heard from Boise Cascade for two years.

"* * * * *

"Q Did you continue to seek employment in this field?

"A Yes.

"\* \* \* \* \*

"Q But always with your wage restriction?

"A Of course."

Thus, she could have commenced work at $40 per month more than she was receiving from her former employer, with a promise to receive "\* \* \* a raise comparable to [her] ability after six months \* \* \*." We must assume that this offer came from another large firm in the same business as Boise Cascade, for she testified that it was to such firms that she had applied.

There is a paucity of information in the record as to starting salary and practices with reference to specialized telephone sales work of the nature claimant performed at Boise Cascade. In our former opinion we noted that a " 'field trainee' worked as a sales correspondent for a time at a starting salary of $750. He was the only 'field trainee' who had ever worked as a sales correspondent as part of his training." Thus, it is obvious this person was a trainee field salesman, not a trainee sales correspondent. Claimant testified that she set her requirements at $750 per month because she " had looked in the newspaper under sales jobs and I had a feeling just about what they were— well, for what my job was worth, really, in my mind, and—and—oh, minds of other people." Claimant testified repeatedly that she would not take any job, except in the small specialty she had been in (she did not really know whether such jobs existed with other companies and offered no evidence that they did), for at least $750 per month. Typical of her testimony in this regard was: "\* \* \* I feel I'm worth more than seven and a half but I would go back to work for seven and a half if I find a job that suits me." Some pertinent

evidence was developed from a representative of the Employment Division with five years' experience:

"Q Do you have any personal knowledge of what the prevailing rate of pay for sales correspondents, the same kind of work the claimant was doing with her two years of experience would be?

"A As far as sales correspondent in lumber brokerage area, when this decision was made on that specific information, I don't know. The telephone sales person makes—the prevailing minimum would be to start about 500 a month * * *.

"* * * * *.

"Q In other words, this is general sales though isn't it?

"A General sales."

ORS 657.190 provides:

"In determining whether or not any work is suitable for an individual, the administrator shall consider, among other factors, the degree of risk involved to his health, safety and morals, his physical fitness *and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation* and the distance of the available work from his residence." (Emphasis supplied.)

In addition, ORS 657.195 states:

"(1) Notwithstanding any other provisions of this chapter, no work is deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

"* * * * *.

"(b) If the remuneration, hours or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality.

"\* \* \* \* \*"

Oregon Administrative Rules, ch 471, § 30-070 states:

"In determining if an individual has good cause for refusing to apply for or to accept work offered and determined by the Administrator to be suitable, the Administrator may, after considering all the factors enumerated in ORS 657.190 and the exceptions under ORS 657.195, rule that a claimant did not have good cause for refusal if he has had six weeks or more to seek out work in his customary and usual occupation \* \* \*."

Claimant had substantially more than six weeks to seek out work in her small specialty.

We cannot assume, as claimant apparently did, particularly in view of our former decision in her case, that she would be discriminated against again after six months on the job she was offered at a beginning salary of $625 per month. We cannot say that a six-month trial period at a salary larger than she had previously received was an unreasonable or unsuitable offer.

In view of the guidelines of ORS 657.190 and 657.195, and particularly the parts emphasized therein, the regulation (OAR 471-30-070) and the facts we have related above, we conclude that there was reliable, probative and substantial evidence under ORS 183.-480(7)(d) to support the decision of the referee and the Appeal Board's order. As noted in our former opinion, particularly in the compensation area, "cause" should be "somewhat narrowly construed." *Fajardo v. Morgan,* supra, 15 Or App at 463. *See also, Gollender v. Morgan,* 17 Or App 104, 520 P2d 453 (1974).

Affirmed.